OPINION OF THE COURT
Howard S. Miller, J.
Without specifying a section of the CPLR, defendant moves (presumably under CPLR 3211 [a] [7]) to dismiss plaintiff’s complaint. Plaintiff is the subrogated insurer of Eugene Eifert, whose 10-year-old Mercury Grand Marquis was destroyed by *569 fire. The fire allegedly happened while the vehicle was parked and unattended. Plaintiff insurer allegedly paid a claim for the damage to the vehicle, and therefore asserts rights by subrogation for whatever claim Eugene Eifert may have had against the defendant manufacturer. No claims for personal injury or damage to property other than the Grand Marquis are involved.
Apparently, it is undisputed that the cause of the fire was a defective electrical part, which spontaneously overheated in proximity to the master brake cylinder, thereby igniting the cylinder, which in turn ignited the entire vehicle. The function of the electrical part was to cancel the cruise control whenever the driver stepped on the brake pedal. Apparently the electrical part was already the subject of a recall.
The issue on this motion, however, is not whether Eugene Eifert would have had a products liability claim against the defendant for damage to his vehicle. Rather, the question presented is the novel question of whether Mr. Eifert’s cause of action, assuming he had one, would survive in the hands of his subrogated insurer. If not, the plaintiffs cause of action cannot succeed.
On that subject, defendant relies heavily on the case of Bocre Leasing Corp. v General Motors Corp. (84 NY2d 685 [1995]). Bocre did not involve a claim in the hands of an insurer, however. Rather, it involved a claim by a purchaser of a helicopter, several purchasers removed from the original purchaser. The Court of Appeals ruled that such a remote purchaser may not recover, against the manufacturer of the helicopter’s engine, for damage to the helicopter itself caused by a defect in the helicopter’s engine.
A very significant factor, in the majority’s opinion, was the concept that allowing a remote purchaser to make such a recovery would essentially give the remote purchaser the benefit of a windfall. The price paid by the remote purchaser of used machinery presumably reflects the risk that the machinery might fail at some point. To hold the manufacturer liable under those circumstances would be to relieve the purchaser of some of the risk that he had assumed, and “would grant the purchaser more than the ‘benefit of [the] bargain’ to which the purchaser agreed.” (Bocre, supra at 688.)
Although Bocre did not involve a subrogated insurer’s claim, the same principle applies here. In its contract of insurance, plaintiff accepted premiums in consideration of an assumption of risk that the vehicle might be destroyed by a variety of fac *570 tors. To allow the plaintiff to pass that risk on to the manufacturer would be to give the plaintiff a windfall of more than the benefit of the bargain in the insurance contract.
Thus, the court believes that the subrogated insurer is in a position analogous to that of the remote purchaser in the Bocre scenario. In reality, the plaintiff essentially is a remote purchaser. Pursuant to the insurance contract, it purchased a well-used Mercury Grand Marquis from Eugene Eifert, albeit for a price well in excess of its then-market value.[1] According to Bocre, public policy does not require the courts to intervene to adjust the basis of contractual bargains. The court sees no material difference between an insurance contract and an ordinary contract of sale in that regard.
The plaintiff seeks to distinguish Bocre by citing cases involving damage to property other than the defective product itself.[2] The court finds such cases inapposite. If plaintiff had paid for damage to the garage in which the Grand Marquis was parked, this might be a different case.
This case, however, cannot be viewed as one where a defective electrical part caused damage to “other property”; namely, the rest of the Grand Marquis. If common experience is any guide, Eugene Eifert did not go to his Mercury dealer and purchase a collection of parts. He bought a Mercury Grand Marquis. If that was the basis of the original contract of sale, the Grand Marquis as a whole must be the standard by which the product is measured for purposes of determining whether “other property” *571 was damaged when a component part failed. If the rule were otherwise, the Court of Appeals in Bocre should have allowed recovery for the airframe of the helicopter when the engine failed.
The plaintiff[3] attempts to draw a further distinction from Bocre by arguing that the defective part failed while doing something (i.e., resting in a parked car) other than what it was designed to do (i.e., controlling the cruise control of a car in motion). The court finds that to be a distinction without a difference. The defective part did not become any less a part of the car while it was at rest. It was still right there, next to the master brake cylinder. It should have been doing what Eugene Eifert expected it to be doing; namely, waiting for orders from the cruise control and the brake peded without incinerating the vehicle. When it failed to accomplish that mission, it converted plaintiff into a remote purchaser of the vehicle, pursuant to a prearranged contract of insurance.
It follows that the plaintiffs cause of action cannot stand, as a matter of law. Therefore, the defendant’s motion is granted and the complaint is dismissed.

. The insurance policy presumably called for plaintiff to pay Eugene Eifert the market value of the vehicle before the incident. In return, the plaintiff presumably obtained the rights to the remains of the vehicle, for whatever scrap value they may have had. The difference in value is offset, in an aggregate economic sense, by the premiums that plaintiff received from its policyholders.

. Hodgson, Russ, Andrews, Woods & Goodyear v Isolatek Intl. Corp., 300 AD2d 1051 (4th Dept 2002) (where the defective product was a fire-proofing material that allegedly caused damage to the building in which it was used. The suit was not for damage to the defective product, but rather for the damage to the building); Arkwright Mut. Ins. Co. v Bojoirve, Inc., 1996 WL 361535, *3, 1996 US Dist LEXIS 9013, *8-9 (SD NY, June 27, 1996) (where the defective product was a generator governor, which not only damaged the generator of which it was a part, but also damaged “adjacent generators, floors, ceilings, furniture,” etc. The court found that the alleged damage to the adjacent floors, etc., was sufficient to sustain a pleading. The court explicitly did not decide whether the pleading was sufficient with regard to damage to the generator of which the governor was a part. Bocre [supra] suggests that it was not sufficient. That is because the Court of Appeals in Bocre did not allow any recovery for the helicopter of which the defective engine was a part).

. Citing Hodgson (supra). The plaintiff overlooks the fact that the cited language from Hodgson arises in the context of damage to “other property,” and the question was whether recovery for the damage should nevertheless be precluded because it was “consequential loss.” (Hodgson at 1052.) If “other property” is not involved, as it is not here, the Hodgson reasoning does not apply.